# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | |
| EARTH FARE, INC. : | |
| : | Chapter 11 |
| : | Case No. 20-10256-KBO |
| Debtor. : | |
| ──────────────────────── : | |
| : | |
| SRS REAL ESTATE : | |
| PARTNERS-SOUTHEAST, LLC : | |
| : | |
| Plaintiff, : | Adversary Proceeding No.: |
| v. : | |
| : | |
| EARTH FARE, INC., : | |
| : | |
| Defendant. : | |
| ──────────────────────── : | |

### SRS REAL ESTATE PARTNERS-SOUTHEAST, LLC'S ORIGINAL COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF A DEBT UNDER 11 U.S.C. § 523

COMES NOW SRS Real Estate Partners-Southeast, LLC ("Plaintiff" or "SRS"), an unsecured creditor and party-in-interest in the above-styled and numbered chapter 11 bankruptcy case (the "Bankruptcy Case") of debtor Earth Fare, Inc. ("Earth Fare" or the "Defendant"), filing this *Original Complaint to Determine the Dischargeability of a Debt under 11 U.S.C. § 523* (the "Complaint") and commencing the above-captioned adversary proceeding (the "Adversary Proceeding"). In support of the Complaint, SRS states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Bankruptcy Case and the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. The Adversary Proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue of the Bankruptcy Case and the Adversary Proceeding is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. SRS consents to the Court's entry of final orders or judgment in the Adversary Proceeding. *See* FED. R. BANKR. P. 7008.

## I. PARTIES

4. Plaintiff SRS is an unsecured creditor of the Defendant and a party-in-interest in the Bankruptcy Case and can be served through its undersigned counsel of record.

5. Defendant Earth Fare is a debtor residing at 220 Continuum Drive, Fletcher, North Carolina 28732 and is a chapter 11 debtor in this case. Defendant may be served with process in this Adversary Proceeding at that address or at such other place as he may be found. *See* FED. R. BANKR. P. 7004(b)(9).

## II. BACKGROUND

6. Earth Fare was a health and wellness supermarket in operation from 1975 until 2020 and leased various locations in the Southeast.

### Emory Disposition Services Agreement

7. Earth Fare was a tenant under a certain lease (the "Emory Lease") at 1578 Avenue Pl #200, Atlanta, Georgia, 30329 (the "Emory Property").

8. On or about June 19, 2018, SRS and Earth Fare entered into that certain *Emory Disposition Services Agreement* whereby Earth Fare agreed to pay three percent (3%) of the gross rental obligation avoided for the early termination of the Emory Lease, less the amount paid to the Landlord for termination in consideration of SRS's services to dispose or terminate of Earth Fare's obligations under the Emory Lease. A true and correct copy of the Emory Disposition Services Agreement is attached hereto as Exhibit "A".

-3-

9. SRS successfully performed its obligations under the Emory Disposition Services Agreement and Earth Fare owes SRS a fee of $119,304.43 (the "Emory Fee").

**Peachtree Corners Disposition Agreement**

10. Earth Fare was also a tenant under a certain lease (the "Peachtree Corners Lease") at 5270 Peachtree Pkwy, Peachtree Corners, Georgia 30092 (the "Peachtree Corners Property").

11. On or about July 17, 2018, SRS and Earth Fare entered into that certain *Peachtree Corners Disposition Services Agreement* whereby Earth Fare agreed to pay three percent (3%) of the gross rental obligation avoided for the early termination of the Peachtree Corners Lease, less the amount paid to the Landlord for termination in consideration of SRS's services to dispose or terminate of Earth Fare's obligations under the Peachtree Corners Lease in consideration for SRS's services to dispose or terminate of Earth Fare's obligations under the Peachtree Corners Lease. A true and correct copy of the Peachtree Corners Disposition Services Agreement is attached hereto as Exhibit "B."

12. SRS successfully performed its obligations under the Peachtree Corners Disposition Services Agreement and Earth Fare owed SRS a fee of $211,326.29 (the "Peachtree Corners Fee").

13. SRS invoiced Earth Fare for both the Emory Fee and the Peachtree Corners Fees in the amounts of $119,304.43 and $211,326.29, respectively for a total fee of $330,630.72 (the "Total Fee").

14. In May of 2019, Steve Jarvis, in his capacity as Earth Fare's Senior Vice President of Real Estate, told SRS that Earth Fare would need payment terms for payment of the Total Fee.

15. SRS requested copies of Earth Fare's termination agreements with the landlords on both Properties, but Earth Fare refused to disclose the termination agreements to SRS.

**Earth Fare Misrepresentations**

16. On or about May 20, 2019, during the International Council of Shopping Centers' RECon conference in Las Vegas, Nevada, Steve Jarvis, in his capacity as Earth Fare's Senior Vice President of Real Estate, proposed to Steve Gunning of SRS that Earth Fare would pay SRS *more than SRS was owed* on the Emory Fee in consideration for extending the payments over time; specifically, Jarvis proposed that Earth Fare would pay SRS $150,000.00 on the Emory Fee instead of $119,304.43.

17. On or about May 20, 2019 Jarvis also represented that Earth Fare needed the payments per the Emory Disposition Services Agreement needed to be spread over two (2) fiscal years for accounting purposes.

18. Based on Steve Jarvis's representations, Earth Fare and SRS agreed orally that Earth Fare would pay a modified, increased Emory Fee of $150,000.00 (increased from $119,304.43) over three (3) installments of $50,000.00, the first to be paid within thirty (30) days of the execution of the Amended Emory Agreement.

19. On July 3, 2019, pursuant to the oral agreement between the parties, Earth Fare paid SRS $50,000.00 per the Amended Emory Agreement.

20. Based on Steve Jarvis's representations and Earth Fare's July 3, 2019 payment of $50,000.00, on July 28, 2019 SRS and Earth Fare memorialized their agreement an amended Emory Disposition Services Agreement (the "Amended Emory Agreement") where Earth Fare agreed to pay a modified, increased fee of $150,000.00 (from $119,304.43) over three (3) installments of $50,000.00, the first to be paid within thirty (30) days of the execution of the Amended Emory Agreement, the second payment to be paid no later than December 23, 2019, and the third payment no later than one year following the execution of the Amended Emory

Agreement, or July 28, 2020. A true and accurate copy of the Amended Emory Agreement is attached hereto as Exhibit "C."

21. Jarvis then proposed that Earth Fare's payment of the Peachtree Corners Fee be paid in the same amount as Emory Fee, $150,000.00, but on slightly different terms.

22. Because Earth Fare refused to disclose Earth Fare's Peachtree Corners termination Agreement, SRS had to rely on Steve Jarvis's representations that the Peachtree Corners Fee was the same or similar to the Emory Fee; based on those representations, on September 24, 2019 SRS and Earth Fare entered a commission agreement that amended the original Peachtree Corners Disposition Agreement as (the "Amended Peachtree Corners Disposition Agreement") follows: Earth Fare agreed to pay SRS $150,000.00 as follows: (i) $50,000.00 on or before February 29, 2020, and (ii) $100,000.00 on or before August 31, 2020. A true and accurate copy of the Amended Peachtree Corners Disposition Agreement is attached hereto as Exhibit "D."

23. Then, on or about November 14, 2019, during the International Council of Shopping Centers' RECon conference in Atlanta, Georgia, when Steve Gunning with SRS approached Steve Jarvis with concern that Earth Fare would also default on the Amended Emory Agreement which was coming due on December 23, 2019, Steve Jarvis, in his capacity as Earth Fare's Senior Vice President of Real Estate, told Steve Gunning that "Earth Fare has plenty of money" and both Emory and Peachtree Corners obligations would be honored.

24. On December 23, 2019 Earth Fare failed to pay its second payment obligation in the amount of $50,000.00 under the Amended Emory Agreement.

25. As a result of Earth Fare's default on the Amended Emory Agreement, SRS called Steve Jarvis who represented to SRS that the reason Earth Fare did not pay SRS per the Amended

Emory Agreement was that Earth Fare's Chief Financial Officer Scott Little was in a skiing accident.

26. When making the misrepresentations detailed in paragraphs 14, 16, 17, 21, 23, and 24 *supra*, Steve Jarvis advised that Scott Little, Earth Fare's Chief Financial Officer was the officer for Earth Fare providing Steve Jarvis with authority to make the representations.

27. The last and only payment made on the Amended Emory Agreement was in July of 2019 and the Amended Emory Agreement is currently in default and due for the December 23, 2019 payment and thereafter.

28. Earth Fare has made zero payments per the Amended Peachtree Corners Agreement and the Amended Peachtree Corners Agreement is currently in default and due for the February 29, 2020 payment and thereafter.

29. SRS would not have extended Earth Fare credit but for Steve Jarvis's material misrepresentations regarding Earth Fare's financial condition.

30. SRS would not have extended Earth Fare credit but for Steve Jarvis's empty proposal to pay SRS additional monetary consideration on the Emory Disposition Agreement if SRS pushed the payments out over two fiscal years.

31. When SRS contacted Steve Jarvis on December 23, 2019 to inquire into why Earth Fare did not make the December 23, 2019 payment per the terms of the Amended Emory Agreement, Steve Jarvis told SRS that no payment was made because Earth Fare's CFO was in a skiing accident; upon information and belief, this representation was false.

32. As a result of Earth Fare's material misrepresentations made by its agent Steve Jarvis, SRS forbear its rights to send written demand, file suit, and otherwise secure its obligations.

33. On February 4, 2020 (the "Petition Date") Earth Fair filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") with the first payment on the Peachtree Corners Amended Agreement due in three weeks, February 29, 2020.

34. On or about April 7, 2020, SRS filed a Proof of Claim in Debtors' Bankruptcy Case in which it asserts a claim (the "Claim") in the amount of $280,630.72. A true and accurate copy of the Claim is attached hereto as Exhibit "E."

### III.   COUNT I - NONDISCHARGEABILITY OF PREPETITION CLAIM PURSUANT TO 11 U.S.C. §523(a)(2)(A)

35. SRS hereby incorporates the foregoing paragraphs 1 through 34 as if they were set forth fully herein.

36. In connection with the Emory and Peachtree Corners Amended Agreements, Earth Fare, through its agent Steve Jarvis, knowingly made materially false representations regarding Earth Fare's financial condition, on which SRS reasonably relied, and Steve Jarvis caused such statements to be made with the intent to deceive SRS.

37. In connection with the Emory and Peachtree Corners Amended Agreements, Earth Fare, through its agent Steve Jarvis, knowingly made materially false representations that Earth Fare would pay SRS additional monetary consideration, to wit: $150,000.00 instead of $119,304.43, on which SRS reasonably relied to extend credit regarding the amount owed on the Emory Agreement, and Steve Jarvis caused such statements to be made with the intent to deceive SRS.

38. If Earth Fare, via its agent Steve Jarvis, had been truthful in its representations to SRS of its financial condition and that it would pay SRS additional consideration, then SRS never would have extended credit via the Emory and Peachtree Corners Amended Agreements.

39. If Earth Fare, via its agent Steve Jarvis, had been truthful in its representations to SRS of its financial condition and that it would pay SRS additional consideration, the SRS would have sent demand, filed suit, and otherwise taken steps to secure payment of Earth Fare's obligations.

40. Steve Jarvis knew at all times hereto knew that the statements made to SRS regarding its financial condition and that it would pay SRS additional consideration were false, that such statements would induce SRS to extend credit via the Emory and Peachtree Corners Amended Agreements, and were made with the intent for SRS to rely on same in considering to extend the credit.

41. Steve Jarvis at all times hereto knew that the statements made to SRS regarding Earth Fare's CFO's skiing accident were the purposes of delay, made in bad faith, and made with the intent for SRS to rely on same to forbear from sending demand, filing suit, and otherwise taking steps to secure payment of Earth Fare's obligations.

42. Earth Fare, through its agent Steve Jarvis, representations did induce SRS to extend credit and, as a result of such misrepresentations, SRS has been damaged in the amount of no less than $280,630.72, exclusive of costs and fees.

43. Accordingly, SRS has performed all conditions precedent.

44. Plaintiff SRS, requests that this Court enter an order denying the discharge of Plaintiff's claim pursuant to section 523(a)(2)(A) of the Bankruptcy Code and tax the attorney's fees and costs relating to the prosecution of this matter against Defendant Earth Fare.

45. Plaintiff SRS, requests that this Court award Plaintiff punitive damages for the fraudulent, intentional, and willful misconduct of Defendant Earth Fare.

### IV. COUNT II - NONDISCHARGEABILITY OF PREPETITION CLAIM PURSUANT TO 11 U.S.C. §523(a)(6)

46. SRS hereby incorporates the foregoing paragraphs 1 through 45 as if they were set forth fully herein.

47. SRS's Claim arose from a willful and malicious injury to SRS and/or its property caused by the acts or omissions of Earth Fare via its agent Steve Jarvis in connection with Earth Fare's obtaining credit via extension of time to pay the Emory and Peachtree Corners Fees.

48. Earth Fare intended that SRS and/or its property suffer the injury caused by the acts of omissions of Earth Fare via its agent Steve Jarvis in obtaining the credit.

49. The representations were made with the willful and malicious intent to induce SRS to extend credit via the Emory and Peachtree Corners Amended Agreements.

50. There was an objective, substantial certainty of harm to SRS and/or its property because of Earth Fare, via its agent Steve Jarvis, acts or omissions and false statements regarding its financial condition in Earth Fare obtaining the extension of credit via the Emory and Peachtree Corners Amended Agreements.

51. Alternatively, Earth Fare had a subjective motive to cause harm to SRS and/or its property through his acts or omissions in obtaining the extension of credit.

52. As set forth with more particularity above, Defendant intentionally, willfully, wantonly, recklessly, and/or negligently misrepresented material facts to, and suppressed information from, SRS to induce it to extend credit to Earth Fare.

53. Earth Fare, through its agent Steve Jarvis, made these misrepresentations of material fact to SRS with the knowledge that they were false, or with reckless disregard for whether or not such material facts were true.

54. These misrepresentations of material fact were made by Earth Fare, via its agent Steve Jarvis, with the intent to deceive SRS, and knowledge that it would induce SRS to extend credit.

55. The representations, acts, and omissions did induce SRS to extend credit.

56. As a result of Earth Fare, via its agent Steve Jarvis, acts and omissions, SRS suffered the damages represented by its Claim made in the Bankruptcy Case of $280,630.72.

57. SRS requests this Court enter an order denying the discharge of Plaintiff's Claim pursuant to Section 523(a)(6) of the Bankruptcy Code, and tax the attorney's fees and costs relating to the prosecution of this matter against the Defendant.

58. Plaintiff SRS, requests that this Court award Plaintiff punitive damages for the fraudulent, intentional, and willful misconduct of Defendant Earth Fare.

WHEREFORE, BASED UPON THE FOREGOING, SRS respectfully requests that the Court issue a citation for the Defendant to appear and answer this Complaint, and that upon a trial of this Complaint, SRS be awarded a judgment against the Defendant for the following:

(i) A determination that the Claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(2);

(ii) A determination that the Claim is not dischargeable pursuant to 11 U.S.C. § 523(a)(6);

(iii) An award of punitive damages to SRS for Earth Fare's fraudulent conduct;

(iv) SRS's reasonable attorneys' fees and costs incurred herein;

(v) Prejudgment interest;

(vi) Post-judgment interest; and

(vii) Such additional and further relief which the Court deems just and proper and to which SRS may show itself to be justly entitled.

This 29th day of April, 2020.

Respectfully submitted,

**FRANKLIN & PROKOPIK**

***/s/ Michael P. Torrice***
MICHAEL P. TORRICE (6079)
500 Creek View Road, Suite 502
Newark, DE 19711
(302) 594-9780
*Attorney for Plaintiff*


**WEENER & NATHAN, LLP**

**/s/ Devin B. Phillips**
Devin B. Phillips
Georgia Bar No.: 189782
dphillips@wnllp.com
*Attorney Pro Hac Vice for the Plaintiff*
5887 Glenridge Drive, NE
Suite 275
Atlanta, Georgia 30328
T: (770) 392-9004
F: (770) 522-9004